BOLIN, Judge.
Larry Mayes instituted the present action against the defendant insurance company for the total loss of his 1960 model Ford Galaxie automobile which was destroyed by fire after having been involved in a collision. Plaintiff purchased the automobile new, and at the time of the accident had owned same for approximately two months and had driven it about twenty-six hundred miles. Universal C. I. T. Credit Corporation intervened as plaintiff’s mortgagee under a loss payable clause of the insurance policy in question. The original purchase price of the car was $3822.73. The lower court rendered judgment in favor of plaintiff in the amount of $3562.73 on the basis that the automobile had been totally destroyed by fire. There was additional judgment in plaintiff’s favor for penalties and attorney’s fees. The judgment also recognized in-tervenor’s claim under the policy. Defendant insurance company has appealed, and plaintiff has neither appealed nor answered the appeal.
The undisputed facts show the subject automobile was purchased September 16, 1960, and was totally destroyed by fire on November 27, 1960. On the day of the fire, plaintiff telephoned the residence of the defendant’s local agent at Jonesboro, Louisiana, in an effort to notify him of the loss. The agent was not at home, but his wife informed him of the telephone call and he met plaintiff that same day at a local garage where the burned automobile had been towed and stored. Together, plaintiff and defendant’s agent examined the automobile, discussed the matter in detail and plaintiff rendered a written report relative to the claim. This report was forwarded by the local agent to defendant’s claim office at Monroe, Louisiana, the following day. Defendant immediately thereafter contacted an independent insurance adjuster at Monroe and authorized him to make a full investigation of the claim. Following his employment, the adjuster testified he went to plaintiff’s home at Goldonna within four days in an effort to discuss the matter with him. The adjuster testified he was unable to contact plaintiff the first two or three times he called at his home; but he was certain he did personally interview Mayes by the middle of January, 1961. He stated he was unable to settle the claim with him under the authority and instructions given by the defendant company. The adjuster attempted to settle the claim by offering plaintiff a 1960 model Ford automobile in place of the one destroyed by the fire. The adjuster was of the opinion that the automobile offered as a replacement was similar and equal in value to the one destroyed. However, Mayes refused such offer and contended he was entitled to a cash settlement for the value of the car which was much more than offered him by the adjuster. After it became obvious that a settlement on this basis was impossible the adjuster testified the company instructed him in February, 1961, not to attempt any further settlement of the claim.
*892 The present suit was instituted March 10, 1961, for $3800, plus penalties and attorney’s fees, and on March 23, 1961, plaintiff’s attorney was offered $2475 as a cash settlement in lieu of plaintiff accepting one of the previously offered replacement automobiles.
There is only one factual matter in dispute which relates to the insurance adjuster’s testimony that during one of his conversations with plaintiff, he gave him a proof of loss form and instructed him to complete same and forward it to defendant’s office at Monroe, Louisiana. Plaintiff denies any such forms were given him, but to the contrary, he is positive that the subject matter was never mentioned to him by anyone. However, it is undisputed that no formal proof of loss was given by plaintiff to defendant company.
There is no dispute that plaintiff’s car was totally destroyed by fire; and that same was covered by an insurance policy issued by defendant company; and that as such, defendant is liable under such policy; but there is serious dispute as to how such award should be computed.
The first question for us to decide, therefore, is whether the lower court correctly calculated the award. The relevant provision of the insurance policy provides :
“The limit of the company’s liability for loss shall not exceed the actual cash value of the property, or if the loss is of a part thereof the actual cash value of such part, at time of loss, nor what it would then cost to repair or replace the property or such part thereof with other of like kind and quality, nor, with respect to an owned automobile described in this policy, the applicable limit of liability stated in the declarations;”
Appellant has maintained the position throughout this case that its only obligation under the above policy provision was to replace the destroyed vehicle with a similar automobile. In this connection, it offered testimony to show that at least two other Ford automobiles had been secured by it and offered to plaintiff which were refused. However, our examination of this evidence reveals that both such automobiles were older than the one destroyed, and also had been driven more miles. Based upon such testimony, the lower court concluded no offer had been made by defendant “to replace the property * * * with other of like kind or quality”. We find no error in such factual conclusion reached by our brother below. Having reached such conclusion, it then became necessary for the court to award a judgment for the actual cash value of the property. As for an accepted method of arriving at such value, we feel the following language from the case of McMahon v. Manufacturers Casualty Insurance Co., 227 La. 777, 80 So.2d 405 (1955), is appropriate:
“It is difficult to recognize or accept any fixed rule in determining an exact value of an automobile, whether totally or partially damaged; nor can any Bluebook Guide, fixing in a general sense respective valuations of automobiles, be adopted by us. We are, therefore, compelled to resort to given and existing circumstances in relation to its age and prior use in fixing a valuation.
“Other than the 5^-per-mile depreciation testified to by Mr. Doggett, we feel that the life expectancy of an automobile purchased new and subjected to ordinary use is that of four years and consider it to be an appropriate and reasonable method to be adopted by us in this instance.”
At the conclusion of the case, the trial judge gave informal reasons for his judgment which were dictated to the court reporter in which we note the following comment:
“I think what the company should have done is to offer to settle with the man based on the depreciated value based on the use and mileage he had on the car. I feel it should be this *893 price of $3822.73 less $0.10 a mile, * * *»
Pursuant to such reasons, a formal judgment was rendered and signed in the principal sum of $3562.73. Using the basis of an annual 25% depreciation as authorized in the McMahon v. Manufacturers Casualty Insurance Co. case, supra, the amount would be slightly in excess of the judgment, but inasmuch as plaintiff has not appealed nor answered the appeal, the judgment as calculated by the lower court will not be disturbed.
The next question presented is whether plaintiff is entitled to an award of penalties and attorney’s fees under LSA-R.S. 22:658, which provides in part as follows:
“All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of stick proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney’s fees for the prosecution and collection of such amount. * * * ” (Emphasis supplied by this Court.)
As previously stated, it is undisputed that plaintiff did not render a proof of loss to defendant on any forms provided by the company for such notice. While one of defendant’s witnesses testified such forms were furnished plaintiff with instruction to complete same and mail them to defendant’s office, this was denied by plaintiff, and we accept his version because we believe it would have been unreasonable and unnecessary to have submitted such after both parties fully understood the nature of the claim and defendant’s adjuster had attempted to settle same.
In our opinion, the serious and most perplexing question presented is whether the recovery of penalties and attorney’s fees under the aforementioned statute is precluded because no such formal proof of loss was made. In this connection, we note the following appropriate and relevant enunci-ations in the case of Steadman v. Pearl Assurance Company, Ltd., 242 La. 84, 134 So.2d 884 (1961):
“A review of the jurisprudence interpreting LSA-R.S. 22:658 discloses that an insured must make a demand to his insurer- — unless such demand is waived — for loss suffered by him before he is entitled to penalties and attorney’s fees for non-payment of such loss. Tedesco v. Columbia Ins. Co. of New Jersey, 177 La. 142, 148 So. 8; Ouachita Parish Police Jury v. Northern Ins. Co. of New York, La. App., 176 So. 639.
sjc i}c # %
“The statute under consideration is penal in nature, and, therefore, is subject to strict construction. Nichols v. Iowa Mutual Insurance Company, 232 La. 856, 95 So.2d 338; Tedesco v. Columbia Ins. Co. of New Jersey, 177 La. 142, 148 So. 8. This strict construction applies to both the plaintiff and the defendant.” (Emphasis supplied by this Court.)
As to how and when such demand may be waived, we feel such subject was thoroughly discussed in the case of Sbisa v. *894 American Equitable Assur. Co. of New York, 202 La. 196, 11 So.2d 527, 145 A.L.R. 332 (1942). In that case, the question was presented as to whether an insured was precluded from recovery of the statutory penalties and attorney’s fees where no demand had been made following the sub-misson of the necessary proof of loss. In passing on this question the court, on rehearing, held:
“ * * * While the statute plainly contemplates a demand, other than the mere filing of a proof of loss and the filing of a suit in order for the penalties to attach, the requirement applies only in cases where the proof of loss has been filed and the company has passively denied liability by failing to make payment within sixty days from the date upon which it received the proofs or where it has failed to adjust the loss and tender to the assured the amount which is due under the policy. But to say that in a case like this, where the proof of loss has been submitted and the company has notified the assured that it will not pay, that the assured is required to go through the useless ceremony of making another demand on the company, in order to be entitled to the penalties, would be to resolve that the plaintiff should treat the denial of the company as meaningless. The strict interpretation which is to be accorded to the statute does not require that we reach such an absurd consequence and, particularly so, in view of the well-established jurisprudence that, in cases where a putting in mora is exacted, it is unnecessary to do so where the debtor denies the obligation.” Authorities cited.
The Sbisa case, supra, was also analyzed and annotated in 145 A.L.R. 332.
While we are fully cognizant that LSA-R.S. 22:658 is penal in nature, and should be strictly construed, and not ■extended by implication, we feel the instant ■case is analogous to Sbisa v. American Equitable Assur. Co. of New York, supra. The major difference in the two cases is that in the Sbisa case, the court was confronted with the lack of a proper demand', while in the instant case, we are confronted with the lack of a formal proof of loss. However, the principle is the same in that undoubtedly the purpose of both such requirements is to guarantee the insurer that it be timely and fully apprised of the demand of the insured; and that thereafter the company arbitrarily and capriciously fails to meet its obligation. Under the facts and circumstances of the instant case, it would have been useless for Mr. Mayes to have sent a formal proof of loss to the insurance company after he had made a full disclosure and demand to its local agent following which an adjuster called on him and actually made him an offer. We are unable to see what useful purpose would have been accomplished by rendering such a formal notice. If, after defendant’s local agent had been notified of the loss, defendant had merely passively refused to pay the claim, we could understand how it could then contend a formal proof of loss was a prerequisite for the imposition of the penalties, but where the company denies the full claim and actively negotiates for a different settlement, we fail to see that such formal notice is relevant or necessary.
Having concluded that plaintiff in the instant case fulfilled the requirements of the statute as same relates to the said proofs of loss, we now pass to the determination of the factual question of whether the defendant’s refusal to pay was “arbitrary, capricious or without probable cause”. The trial judge decided this question favorably to plaintiff, and we find no error in his decision. After plaintiff refused to accept the replacement vehicles, which we have already decided were not comparable to the one destroyed by fire, the insurance adjuster testified that the defendant refused to make any other offer of settlement, and in fact, notified him that all prior authorization for settlement had been withdrawn. Under these circum *895 stances, we think the lower court was eminently correct in concluding that such action was clearly arbitrary and capricious and subjected the defendant to the payment of penalties on the difference between the amount of $2475 offered and the sum of $3562.73 which was legally due. There has been no contention that the award of $500 as attorney’s fees is unreasonable if same is adjudged to be due.
Accordingly, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.