176 So.2d 804 (1965)
Dr. Howard SENSAT, Plaintiff-Appellant-Appellee,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellee-Appellant.
No. 1441.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1965.
Rehearing Denied July 26, 1965.
*805 Edwards & Edwards, by Nolan J. Edwards, Crowley, for plaintiff-appellant-appellee.
McBride & Brewster, by William H. McBride, Lafayette, for defendant-appellee-appellant.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
FRUGÉ, Judge.
Plaintiff, Dr. Howard Sensat, owned a home in Iota, Louisiana, which was severely damaged by fire on October 20, 1963. At the time of the fire the house was covered by a fire insurance policy issued by defendant, State Farm Fire and Casualty Insurance Company, with limits of $35,000 on the dwelling. On January 30, 1964, this suit was instituted by Dr. Sensat, alleging that as a result of the fire the residence was a total loss and that therefore there should be an award of $35,000, the stated value in the policy. Plaintiff further prayed that penalties and attorney fees be assessed against the defendant for its arbitrary and capricious failure to pay or tender payment of any amount under the policy. Defendant's answer alleged that the residence was only a partial loss.
The district court ruled that the fire had occasioned a total loss to the residence and awarded plaintiff the limits of the policy. After granting a new trial for the limited purpose of considering the prayer for penalties and attorney fees, the district court rejected these demands, and from that portion of the judgment plaintiff appealed. Thereafter, defendant appealed, contending that the lower court erred in holding that the residence was a total loss.
We must first resolve the issue of whether the fire loss was total or only partial.
The house consisted of a two-story section containing a den and bedrooms and a one-story section containing a living room and kitchen, all built on a concrete slab foundation. The blaze was centered in the two-story section of the house with extensive damage to that portion and lesser damage to the one-story section. The fire lasted for about one and a half to two and a half hours.
Plaintiff introduced the testimony of two general contractors, one of whom, Mr. Oren Linscombe, had extensive experience in the installation of cement concrete foundations. Both testified that they had examined the premises and considered it to be a total loss. Mr. Linscombe stated that, although he could not be certain, it was quite possible that the intense heat to which the foundation was subjected could have caused structural damage, weakening the concrete slab.
Defendant introduced the testimony of three general contractors who were of the opinion that the house could be repaired using much of the materials remaining after the fire. Mr. Alvin Hebert examined the premises on behalf of defendant a few days after the fire and submitted an estimate in the amount of $25,225.13. He stated that although severe heat would cause small cracks on the surface of a concrete slab, he did not think the small cracks would cause any weakening of the foundation.
Mr. E. J. Simon examined the house a few days before the trial of this case and estimated the cost of repairing it to be $24,796.00. He stated that he did not think the foundation was damaged, but admitted there was a possibility of such damage. At the time Mr. Simon examined the house, he was accompanied by another contractor, who offered the opinion that the loss was *806 only partial, but he did not make any independent estimate of how much the repairs would cost.
The trial judge visited the remnants and from his inspection and evaluation of the testimony concluded that the house was a total loss. In so finding, he relied in part on the case of Occhipinti v. Boston Ins. Co., Orl.App., 72 So.2d 326, wherein it was stated:
"But we cannot overlook the fact that there was and is considerable expert opinion to the effect that there would have been a danger that possibly at some later time there might have developed defects which might not at first manifest themselves, but which nevertheless might be attributed to the damage done by the fire to those portions of the building which some of the builders say they could have made use of.
"Should an insured owner be required to assume the hazard of such a possibility? We think not. We feel that an insured owner in such a case is entitled to be made whole and that he is not made whole when there is a reasonably remote possibility that at sometime in the future he may be called upon to repair defects resulting from the occurrence of the hazard against which he has purchased insurance. In such case he has sustained at least constructive total loss and is entitled to recover for such loss."
The rule of the Occhipinti case is, in our opinion, meritorious and finds support in later jurisprudence. See The Forge, Inc. v. Peerless Cas. Co., La.App. 2nd Cir., 131 So.2d 838. There is certainly a reasonable possibility in the instant case that the foundation was damaged by the severe heat. In such instance the insured should not be forced to assume the risk of such hidden dangers. We believe the trial judge correctly applied the law as stated in Occhipinti and did not err in finding that the insured premises was a total loss.
We must next consider the question of whether plaintiff is entitled to an award of penalties and attorney fees under LSA-R.S. 22:658, which provides:
"All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees. Amended and reenacted Acts 1958, No. 125."
The record reveals that Mr. George J. Bernard, Jr., as an adjustor for State Farm Fire and Casualty Company, visited Dr. Sensat on October 25, 1963, for the purpose of investigating the extent of the fire loss. On learning of the severity of the fire, Mr. Bernard found it necessary to arrange for an appraisal to be made of the damaged *807 house by Mr. Hebert. On or about October 11, 1963, he received Mr. Hebert's estimate of the damage, in the amount of $25,225.13.
On December 20, 1963, Mr. Bernard and Mr. Rojas, an agent of State Farm Fire and Casualty Company, visited Dr. Sensat with the intent of settling the loss for the amount of the estimate made by Mr. Hebert. Dr. Sensat would not accept that amount as payment in full for the loss. It appears that Dr. Sensat had maintained from the beginning that there was a total loss and that he was entitled to the limits of the policy.
On January 28, 1964, plaintiff's attorney, in a conversation with Mr. Bernard, demanded payment of the full amount of the policy limits. Mr. Bernard rejected the demand, stating that defendant was liable only in the amount of $25,225.13. As previously stated, this suit was filed on January 30, 1964.
The trial judge, after rejecting defendant's contention that no demand for payment had been made, stated:
"* * * whereas a formal proof of loss was never submitted, under the circumstances it was not necessary and would have been a useless thing. All of the facts were known by defendant-insurer almost immediately after the fire and it had shortly thereafter determined what it considered to be the loss through the appraisal by its own appraiser."
After making these findings favorable to to the plaintiff, the trial judge concluded, however, that under a strict interpretation of the statute, there was no provision for penalties and attorney fees under the facts of this case. We disagree with the trial court's interpretation of the statute.
We are unable to find that the defendant-insurer was anything less than arbitrary and capricious in failing to pay or tender payment of the amount of $25,225.13 after having fully investigated the loss. The defendant did not at that time dispute that this amount was due, but conditioned an offer of payment of this amount on plaintiff's accepting it in full settlement of the claim. This offer to settle the claim was in no manner a tender of payment as contemplated by R.S. 22:658, for a tender of payment must be absolute and unconditional. Fruge v. Hub City Iron Works, Inc., La.App. 3rd Cir., 131 So.2d 593.
Defendant's contention that no proof of loss was submitted is adequately answered by Mayes v. State Farm Mutual Automobile Insurance Co., La.App. 2nd Cir., 141 So.2d 890. There it was held that since the purpose of requiring the submission of a proof of loss is to guarantee that the insurer is apprised of the insured's claim, where the insurer was in fact fully apprised of the claim and made an offer of settlement the submission of a proof of loss by the insured would have served no usual purpose and was therefore unnecessary. Here, as in the Mayes case, submission of a proof of loss would have been a useless act.
On oral argument counsel for defendant contended that defendant had at all times stood ready to pay the actual cost of repairs, whatever they might be, under the provisions of the contract of insurance which grants the company an option to "repair, rebuild or replace the property." However, the policy further provides that this option must be exercised by notifying the insured of the company's intent to do so within thirty days after receipt of proof of loss. It does not appear that defendant at any time conveyed to plaintiff its intent to exercise this option and for this reason defendant's contention is without merit.
In summary then, although there was no possible reasonable dispute as to the insurer's liability for $25,225.13, it failed to pay or tender that amount after demand therefor was made. We are holding the insurer liable for the full amount of $35,645.00 under its insurance contract.
*808 Under these circumstances, where an insurer fails to tender or to pay within the statutory period that part of its liability for which without dispute it is liable, thus causing an insured to retain an attorney to collect this undisputed portion of the liability as well as that portion as to which there may be a bona fide dispute, the penalty statute requires the insurer to be subjected "to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss * * * together with all reasonable attorney's fees for the prosecution and collection of such loss," LSA-R.S. 22:658. Steadman v. Pearl Assurance Co., 242 La. 84, 134 So.2d 884, on remand, La.App. 4th Cir., 167 So.2d 527; Fruge v. Specific Employers Insurance Co., 226 La. 530, 76 So.2d 719; Williams v. Travelers Insurance Co., La.App. 3rd Cir., 157 So.2d 356, 360-361. The statute provides that this 12% penalty shall be collected only on the difference between a partial tender and the total recovery, in the event a partial tender has been made; but, as previously noted, none such has been made in this case. Although the statute mandatorily provides that twelve percent of the entire amount of the "total amount of the loss" is recoverable, and that attorney's fees must be fixed as reasonable with regard to the recovery of such total loss, the amount of attorney's fees to be awarded is left to the discretion of the court, although they must be reasonable. See Steadman v. Pearl Assurance Co., above cited, at 167 So.2d 531.
After taking into consideration the amount of the work performed by the attorney, as well as the existence of a contingency fee contract between plaintiff and his attorney, we have concluded that an award of attorney's fees in the amount of $4,000.00 will be proper and appropriate in the present case.
For the reasons set forth herein, it is ordered, adjudged, and decreed that the judgment of the lower court be amended to provide that defendant, State Farm Fire and Casualty Insurance Company is liable to plaintiff, Dr. Howard Sensat, in the amount of $35,645.00, together with penalties of 12% on such amount, and attorney's fees of $4,000.00, with legal interest on the principal, penalties and attorney's fees from date of judicial demand. Defendant shall bear the costs of this appeal, as well as all costs in the lower court.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.