Joseph **PARRETT**, Plaintiff,

v.

**COMMERCIAL UNION INSURANCE CO.**, Defendant.

Civ. A. No. 76–1190.

United States District Court, E. D. Louisiana.

April 23, 1981.

R. Ray Orrill, Jr., New Orleans, La., for plaintiff.

Nigel E. Rafferty, New Orleans, La., for defendant.

CASSIBRY, District Judge:

The plaintiff Joseph Parrett, owner of a wood diesel fishing vessel the F/V MR. SCHLITZ, seeks to recover from the defendant Commercial Union Insurance Company for lightning damage to the vessel's radar and two depth finders on June 22, 1975, under a marine hull policy issued by the defendant insuring the vessel for the period March 9, 1975 to March 9, 1976, plus penalties and attorney's fees.

The court has jurisdiction under 28 U.S.C. § 1332.

The insurance value of the vessel as stated in the policy is $30,000, and the policy provides for a deductible amount of $2,000.00, the amount that is to be borne by the assured before any claim is to be paid by the assurer. The policy further provided that "In event of damage, cost of repairs to be paid without deduction of one-third, new for old."

The plaintiff gave notice promptly of the damage, and the defendant does not contest the occurrence nor the fact that lightning is a peril insured against under the policy, nor that the vessel's equipment was damaged by lightning as claimed by plaintiff. The only issues before the court are the quantum due under the policy, and whether penalties and attorney's fees should be assessed against the defendant under the circumstances of this case. The quantum issue arose because, after efforts to repair the damaged radar failed, the parties could not agree on the most comparable radar model to the discontinued model that was damaged.

The damaged radar was a Model KRA 248, manufactured by Konel, which had been purchased by plaintiff in 1973 as a floor model at a boat show through Frank L. Beier Radio, Inc. A survey of the damage was made by Arthur H. Terry, marine surveyor, on June 24, 1975 and he estimated the cost of repairs to be $2,600.00. Attempts were made by the plaintiff for approximately six months to repair the radar, but it could not be repaired successfully to function clearly in temperatures below 50 degrees. Finally in January 1976 the repair efforts were terminated after the plaintiff declined the suggestion of one of the repairmen at Air Marine Radio, Inc., in Harvey, Louisiana and of Philip M. Duvic, claims manager for the underwriters G & M Marine, Inc., to return the radar to the manufacturer, and after plaintiff was advised

that the unit would cost more to repair than it was worth. The plaintiff expended a total of $2,049.00 to repair the vessel.

## REPLACEMENT COST OF DAMAGED EQUIPMENT

■ When Philip Duvic was advised that the claim could not be resolved by repair of the radar unit, he made efforts to find comparable equipment so that the claim could be compromised under the "new for old" provision of the policy. The plaintiff or his wife made similar efforts. The Konel KRA–248 had been purchased for $3,350.00 because it was a floor model. The last price schedule of Konel to carry the KRA–248— May 1974—gave the unit a list price of $5,495.00. Several units were considered as being in the range of comparability.

Duvic put together a settlement offer using the Kelvin-Hughes Si-Tex Model 22 as the most comparable radar replacement at a price of $4,300.00, installed, and added to that figure $800.00 and $175.00 for the two depth finders, and $130.00 for hauling the vessel to drydock for the installation of two transducers. By adding the sum of $1,793.13 as the expenses of repair which had been reported to him, he calculated the loss to be $7,198.00, and the claim under the policy, after the deductible, to be $5,198.00. On the basis of these figures, Duvic offered Parrett at a meeting on February 10, 1976 the sum of $4,900.00 in cash immediately to settle the claim because his authority limit was under $5,000.00. He told the plaintiff that, if he were willing to wait three weeks for further authority, the total sum of $5,198.00 would be paid in settlement of the claim.

The plaintiff refused the settlement offer because it was based on a cheaper model radar unit, without allowance of any amount for installation, or any amount for removing the equipment or replacing the transducers. He had no objection to the amount proposed for replacement of the depth finders. The plaintiff concluded that the most comparable radar unit to the damaged one was the Konel Model 448. The list price in February and March 1976 for this model was $5,795.00. Duvic's further

attempts to induce plaintiff's counsel to accept his settlement offer failed, and this suit was filed on April 19, 1976.

The defendant filed its answer to the complaint on May 11, 1976, and at the same time deposited $763.13 in the registry of the court on the basis of its answer that the damaged radar could be repaired for the estimated sum of $2,763.13. The case was first set for trial on November 3, 1977. On October 25, 1977 the defendant made an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure in the amount of $5,198.13. That offer was not accepted, and this matter was tried to the court without a jury on July 7, 1980 and September 3, 1980, and submitted.

Both parties agree that there was no exact replacement in 1976 for the damaged Konel Model KRA 248. The plaintiff contends that the Konel Model KRA 448 was the most comparable unit, and the defendant contends that the Kelvin-Hughes Si-Tex Model 22 was the most comparable unit. The Konel 448 had a list price of $5,795.00, and the Si-Tex 22, manufactured for a cheaper price in Japan, had a list price of $4,450.00. The Konel 248 had a six-foot antenna as compared to a six and one-half foot one on the Konel 448, and a four foot one on the Si-Tex 22. The antenna on the Si-Tex 22 weighed ten pounds more than that on the Konel 248. The range setting or range reading on the Konel 248 was one-half mile, as compared to one-quarter mile on the Konel 448 and one-half mile on the Si-Tex 22. The Models Konel 248 and 448 had more power than the Si-Tex 22— seven kilowatts as compared to six.

The plaintiff's experts—Salvador Lodato, an expert in electronics and the related field of radar, and Louis Gallman, an expert in radar repair—both were of the opinion that the Konel 448 was the most comparable replacement. Both considered that the same make radar could be installed with less work and expense because a change of the plate, or at least some modification of it, would be required for installation of the Si-Tex 22. Gallman considered that the four-foot antenna of the Si-Tex 22 would be

less effective for scanning narrow waterways than a six-foot antenna, and that the heavier antenna on the Si-Tex 22 was less preferable on a wooden vessel. Lodato regarded the Si-Tex 22 as an inferior radar to the Konel models.

Karl Beier, who has a business which sells and services marine communication equipment, considered that the Si-Tex 22 was the most comparable replacement. His testimony was introduced by the defendant by deposition. He testified that an ordinary operator could not recognize any differences made by the different sizes of antenna or by the different power—only an expert could recognize these differences. In his opinion the one-quarter mile range setting on the Konel 448 made it a more expensive model. Gallman, however, did not regard this feature as adding a lot to the cost.

The evidence shows that the Si-Tex 22 is slightly inferior to the Konel 248 because of its smaller antenna and lower power, and that the Konel 448 is slightly superior because of its ¼ mile reading range. The fact that the Konel 448 is easier and less expensive to install than the Si-Tex 22 makes it more attractive as a replacement. I find that the most comparable replacement at the time of the loss for the Konel 248 was the Konel 448, at a list price of $5,795.00. Although the evidence is conflicting as to the availability of a discount to a single sale customer such as the plaintiff, I find that he could have obtained a ten percent discount for cash or prompt payment, and this discount would reduce the price to $5,215.00. The Konel 448 could have been installed for $490.00, so that the cost plus installation equals $5,705.00, and adding a five percent tax and a freight charge of $60.00 the total cost for the unit, installed, was $6,052.00.

The depth finder replacements—a Bendix DR–25 or 26, 32 V. and a Raytheon DE–732, 120 ft., 12 V., both with transducers—were listed at $875.00 and $179.00 respectively. One seller would have given a 15 percent discount on the Bendix. The cost for installation of the two was $200.00. The depth finders replacement cost, including discount and tax, was therefore $1,169.00.

To install the two transducers would have required dry docking of the vessel. The expense of hauling the vessel to dry dock was shown to be $130.00, but the evidence as to the amount of the dry docking fee was too vague to make an award for this expense. No shipyard estimate was presented, and plaintiff's witness Gallman testified that the cost of the shipyard for installing the transducers could not easily be estimated.

The total amount proved as the cost of replacement of the damaged equipment is $7,351.00. Adding to that the cost of the repair efforts, $2,049.00, and subtracting the deductible of $2,000.00, the plaintiff is entitled to judgment in the amount of $7,400.00.

## SALVAGE VALUE OF DAMAGED EQUIPMENT

■ The defendant in its post-trial memorandum contends, and cites authority therefor, that it has a right to the salvage value of the damaged equipment when it replaces "new for old" under the policy. The difficulty with giving any effect to this argument is that the defendant failed to mention this issue in the Pre-trial Order and presented no evidence at trial as to the salvage value of the damaged equipment. The plaintiff admits in his post-trial memorandum that the defendant has the right to the damaged equipment itself upon replacement with new equipment. There is evidence that the cost of removing and hauling away the old equipment was $180.00 in 1976. The right of the defendant to the damaged equipment upon paying the cost of removing it and hauling it from the vessel is recognized.

## PENALTIES AND ATTORNEY'S FEES

■ The plaintiff prays for penalties and attorney's fees under LSA–R.S. 22:658. This statute requires that

All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any

claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% of damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount....

The plaintiff contends that the defendant's failure to pay, or tender, to him the undisputed portion of the claim within 60 days from February 27, 1976, when he submitted his proof of loss and demand for replacement of the damaged equipment in the amount of $8,719.30, subjects it to the 12 percent penalty on the full amount and attorney's fees. The amount of $5,198.00 was not in dispute when the proof of loss was made, the defendant having offered that much in full settlement of the claim on February 10, 1976. The defendant urges that its failure to pay the undisputed portion within 60 days should not be regarded as arbitrary and capricious because it deposited in the registry of the court the amount of the estimated repairs over the $2,000.00

deductible, $763.13, at a time when efforts to repair were still being made, and because it made an offer of judgment in the amount of $5,198.13 in 1977 before the first trial date. The evidence does not substantiate the allegation that there was an expectation that the damage could be repaired in May 1976 when the deposit of $763.13 was made, and the offer of judgment in 1977 does not satisfy the requirement of the Louisiana statute as to payment.[1]

When an insurer does not contest liability under the policy, and a valid dispute exists only as to the total amount of the loss, the insurer's failure to pay or tender within the statutory period the amount it has determined to be proper, and about which there is therefore no dispute, subjects it to the statutory penalties. *Holmes v. Motors Insurance Corporation*, 277 So.2d 472 (La.App. 4th Cir. 1973); *Guillory v. New York Fire and Marine Insurance Co.*, 201 So.2d 366 (La.App. 3d Cir. 1967); see *Steadman v. Pearl Assurance Company*, 242 La. 84, 134 So.2d 884 (1961), on remand La.App., 167 So.2d 527. An insurer's failure to pay under these circumstances is regarded by the Louisiana appellate courts as arbitrary and capricious, and subjects it to penalty on the total amount of loss. *Guillory v. New York Fire and Marine Insurance Co.*, supra; *Sensat v. State Farm Fire and Casualty*, supra note 1.[2]

An award of 12 percent on the total amount of recovery, $7,400.00, and reasonable attorney's fees is appropriate under the circumstances of this case. No evidence has been presented to prove the reasonable amount of attorney's fees in this case. In

---

1. The defendant does not contend that the offer of settlement in February 1976 satisfied the payment requirement, nor could it in view of the holding in *Sensat v. State Farm Casualty*, 176 So.2d 804 (La.App. 3d Cir. 1965) that an offer of settlement conditioned upon its acceptance by the insured in full settlement of the claim is not a tender of payment contemplated by LSA–R.S. 212:658.

2. Compare *Ranzino v. Allstate Insurance Company*, 210 So.2d 907 (La.App. 1st Cir. 1968) wherein the court held that a reasonable disa-

greement existed between the insurer and the insured as to the amount of the loss when the insurer had a bona fide ground for claiming the loss was repairable rather than total as claimed by the insured, and the insurer's failure to pay within the statutory delay was not arbitrary and capricious and did not subject it to liability for penalties and attorney's fees. See also *Foster v. Western World Insurance Co.*, 339 So.2d 395 (La.App. 1st Cir. 1976) and cases therein cited.

his post-trial memorandum plaintiff makes the argument that $3,500.00 would be a reasonable fee. The better course for determining a reasonable fee in this case is for the plaintiff to file in regular course of motion for determination of a reasonable fee supported with an affidavit as to the amount of time his attorney spent on the case, and any other relevant evidence.

The defendant contends that the rule in admiralty actions should control the award of interest in this case, and that exceptional and peculiar circumstances exist in this case because of the defendant's reasonable attempts to discharge its obligations which would warrant the exercise of the court's discretion to deny interest. As a rule prejudgment interest is awarded in admiralty cases except when there are "peculiar circumstances" which would make it inequitable for the losing party to pay prejudgment interest. *Noritake Co., Inc. v. M/V Hellenic Champion*, 627 F.2d 724 (5th Cir. 1980). The efforts of the defendant to discharge its obligations under the policy are not the "peculiar circumstances" which would cause a denial of prejudgment interest. The plaintiff is therefore entitled to interest on the full amount awarded, $7,400.00, from April 19, 1976 to May 11, 1976 when the sum of $763.13 was deposited in the registry of the court, and on the amount of $6,636.87 from May 11, 1976 until paid.

The clerk shall prepare judgment in accordance with the views expressed in this opinion.