315 So.2d 420 (1975)
Darrell H. WITHERWAX, Plaintiff-Defendant in Reconvention-Appellee,
v.
ZURICH INSURANCE COMPANY et al., Defendants, and
Foremost Insurance Company, Defendant-Plaintiff in Reconvention-Appellant.
No. 5014.
Court of Appeal of Louisiana, Third Circuit.
June 24, 1975.
*421 Campoy, Stone & Harvey by Eldon T. Harvey, III, New Orleans, for defendant-appellant.
*422 Baggett, Hawsey, McClain & Morgan by Robert E. Morgan, Lake Charles, for plaintiff-appellee.
Brame, Bergstedt & Brame by Joseph A. Brame, Plauche, Smith & Hebert by Reid K. Hebert, Raggio, Farrar, Cappel & Chozen by Richard B. Cappel, Lake Charles, for defendants.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This suit was filed to recover property damages allegedly sustained as a result of the total destruction, by fire, of a mobile home purchased by the plaintiff. The original defendants included Foremost Insurance Company (which issued a mobile homeowner's insurance policy to the plaintiff), Executive Homes of Louisiana, Inc. (manufacturer of the mobile home), Quality Mobile Housing, Inc. of Abbeville (retail dealer of the mobile home), Zurich Insurance Company (the manufacturer's liability insurer), Travelers Insurance Company (the retailer's liability insurer), and Joseph McCormack (insurance agent for Foremost Insurance Company). Prior to trial, all of the defendants, with the exception of Foremost Insurance Company, defendant-appellant herein, were dismissed from the suit.
Following a trial on the merits, judgment was rendered in favor of the plaintiff, against Foremost Insurance Company. From said judgment the defendant insurer has appealed. Plaintiff answered the appeal seeking an increase in the award for attorney's fees.
The facts leading up to this suit are as follows: On July 9, 1973, the plaintiff, Darrel H. Witherwax, purchased a mobile home from Quality Mobile Housing, Inc. of Abbeville. On July 11th the house trailer was picked up from the manufacturer, Executive Homes of Louisiana, Inc., in Opelousas, Louisiana, and transported to Sulphur, Louisiana, where it was placed on plaintiff's property. Two days later the trailer was "checked out" by the seller, and the plaintiff and his family moved in the following morning. Sunday, July 15th, the mobile home was destroyed by a fire, which was later determined to have originated in a faulty electrical receptacle.
At the time of purchase the plaintiff also obtained comprehensive insurance coverage (through the seller, but issued by the defendant-Foremost Insurance Company) on the mobile home. Coverage commenced on the date of the sale, July 9, 1973. The policy, which was subsequently issued to the defendant, contained a "Limits of Liability" clause reading as follows:
"The limit of the Company's liability for loss to the Mobile Home will be the actual cash value of the Mobile Home at time of loss but in no event to exceed the limit as set forth below for the Policy year in which the loss occurs."
The figure $10,575.00 was inserted within a block, titled "First Year", immediately following the limitation clause. A second policy (on a new form) was later issued by Foremost to the plaintiff (after the fire) on November 3, 1973. Said policy indicated that the coverage therein also commenced on July 9, 1973, that it replaced the old policy, and that the comprehensive coverage was for the "actual cash value" of the mobile home.
Both policies included protection for loss of or damage to the Mobile Home caused by "fire or lightning". Both also contained an exclusionary clause which denied coverage for any damage to the mobile home "which is due and confined to wear and tear, freezing, or mechanical or electrical breakdown and failure, unless such damage is the result of other loss covered by this policy."[1]
*423 Subsequent to the destruction of the mobile home plaintiff filed a proof of loss statement on August 20, 1973, seeking the actual cash value of the trailer, i.e. $11,750.00. A check in this amount was later issued by Foremost to the plaintiff on September 11, 1973. Thereafter plaintiff's attorney received notice from Foremost that the insurance company felt that its limits of liability were actually $10,575.00 and that the check issued for $11,750.00 was to be cancelled and another check issued in the lesser sum. On September 17, 1973, plaintiff was issued a second check by Foremost in the sum of $10,575.00, but returned same unendorsed, indicating he would only accept the actual cash value of the trailer. This suit was subsequently filed on October 12, 1973. Defendant subsequently answered plaintiff's suit and filed a third party demand against Executive Homes of Louisiana, Inc. (the mobile home manufacturer), seeking indemnity for any amount which it might be held liable.
Previous to the trial date a preliminary compromise settlement was worked out among the parties (with defendant Foremost to be released for the sum of $3,000.00 plus 1/3 of the court costs). This tentative settlement was dictated into the record on October 25, 1974. As a part of the settlement, however, the plaintiff was to receive from Executive Homes, a new mobile home of the same type that had been destroyed in the fire. Subsequently, however, there arose a dispute over the type and quality of the mobile home, which the manufacturer was to deliver to the plaintiff under the settlement. Executive Homes also filed bankruptcy proceedings (which resulted in a stay order being issued by the trial judge according to the Federal Rules of Bankruptcy, against further continuation of defendant-Foremost's third party action against Executive Homes). The record is clear, however, that a written compromise agreement, although prepared by Foremost's counsel (after the abovementioned in-Court dictation) and tendered to the plaintiff (including a check from Foremost to plaintiff in the sum of $3,000.00) was never completed or signed. Accordingly, the suit against Foremost was reinstated by the plaintiff and the case was refixed for trial.
Foremost subsequently filed a motion for summary judgment alleging it was entitled to have the compromise settlement which had been entered into between the parties enforced. In addition, a reconventional demand was also filed against plaintiff for damages arising from an alleged breach of the compromise agreement.
Following trial, judgment was granted in favor of plaintiff, against the defendant insurer, in the sum of $11,750.00 plus penalties of 25% and $2,250.00 attorney's fees. Defendant's motion for summary judgment and reconventional demand against plaintiff were also denied.
On this appeal the defendant insurer resists payment in the suit for a number of reasons, all of which form the following issues to be decided. (1) Whether the aforementioned exclusionary clause in Foremost's policy is applicable so as to deny plaintiff's claim? (2) Whether Foremost's liability is limited to $10,575.00 or the actual cash value of the mobile home, i.e. the purchase price of $11,750.00? (3) Whether the compromise agreement should have been enforced? (4) Whether Foremost's third party action against the bankrupt mobile home manufacturer, Quality, should have been stayed? (5) Whether penalties and attorney's fees are due and if so, whether they are excessive?
As aforementioned, plaintiff also seeks an increase in the award for attorney fees from $2,250.00 to $4,000.00, so as to include payment for the additional services required for appeal, as well as increasing that amount awarded for work done at the trial level.

COVERAGE
At the outset defendant contends that the fire loss is excluded by the clause *424 which excludes damages "due and confined to . . . electrical breakdown or failure".
This exact clause was interpreted by the First Circuit Court of Appeal in Bezue v. Hartford Accident & Indemnity Co., 224 So.2d 76 (La.App. 1st Cir. 1969). Therein an automobile was damaged by fire which originated under the dash, apparently due to electrical breakdown or failure. The court, however, observed that the plain language of the questioned exclusionary clause also required that the damage be "confined to electrical breakdown or failure". In Bezue the fire damaged a portion of the engine in addition to the wiring and the court therefore held the exclusion to be inapplicable.
A similiar factual situation exists herein. Although the fire apparently was caused by breakdown or failure in the electrical wiring, the damage was clearly not confined to such, inasmuch as the entire trailer was destroyed by the fire. Accordingly, we apply the interpretation as set out in Bezue and hold that the exclusion is inapplicable.

LIMIT OF FOREMOST'S LIABILITY
Defendant's next contention is that the insurer's extent of liability is limited to the sum of $10,575.00, as provided in the original policy. As pointed out by the able trial judge in his reasons for judgment, the evidence however preponderates to the effect that the $10,575.00 figure was merely an error on the part of one of Foremost's employees, and that Foremost intended to provide, and plaintiff intended to purchase, insurance for the full purchase price of the mobile home. This intention is reflected in the invoice for the mobile home (indicating plaintiff was purchasing coverage of $11,800.00 for a 36-month period for the sum of $836.00) as well as the finance agreement drawn up by the seller (the insurance premium being included for "full comprehensive" coverage). In addition, Quality's sales manager and secretary for the Abbeville office both testified that only full comprehensive insurance was sold on the mobile homes, i.e. the actual cash value or sales price. The defendant insurer also implied such intent by subsequently issuing the aforementioned "replacement policy" after the fire loss, indicating that the comprehensive coverage was for the "actual cash value" of the mobile home.
As a result, we opine that all parties intended the coverage to be for the actual cash value of the mobile home, i.e. $11,750.00. Accordingly, the original policy will be reformed so as to conform to the intention of the parties, as reflected in the second policy, and the insurer is therefore liable for this amount to the plaintiff. Richard v. United States Fidelity & Guaranty Co., 247 La. 943, 175 So.2d 277 (1965); (2) Ferguson v. Belcher & Son, 230 La. 422, 88 So.2d 806 (1956); (3) Rougeau v. State Farm Mutual Automobile Ins. Co., 262 So.2d 803 (La.App. 3rd Cir. 1972); Maryland Casualty Co. v. Kramel, 80 So.2d 897 (La.App. 1st Cir. 1955).

WHETHER THE COMPROMISE AGREEMENT WAS BINDING
Defendant further contends that the settlement dictated into the record was binding on all parties. As aforementioned, however, the record clearly reflects that a final release and compromise were simply never consummated between plaintiff and Foremost. Article 3071 of the Louisiana Civil Code provides that a compromise agreement must be reduced to writing. We opine such was not done in the present case, as contemplated by the Codal Provision. See Lytle v. Commercial Ins. Co. of Newark, N. J., 285 So.2d 289 (La.App. 3rd Cir. 1973). Stablier v. Partin, 278 So.2d 537 (La.App. 1st Cir. 1973), writ refused, 281 So.2d 748 (La.1973).

THE STAY ORDER
Defendant further complains of the action of the trial judge, staying its third *425 party demand against Executive Homes until the bankruptcy case was closed, the bankrupt denied discharge, etc. We find no error in this action taken by the district judge. Under the recently enacted Federal Rules of BankruptcyRule 13-401(a) (effective October 1, 1973) the filing of the Petition in Bankruptcy operates as an automatic stay of the commencement or continuation of any action against the debtor. . . The official comments to the Rule indicate it relieves the debtor from the necessity of filing an application for a stay or an injunction, leaving it open to the creditors to obtain relief from the stay as provided under the other sections of the Rule. Nevertheless, the debtor herein, Executive Homes of Louisiana, Inc., applied for a stay order which was granted specifically against the plaintiffDarrell Witherwax, and his attorney. The stay order, indicating that Executive Homes had been adjudged a bankrupt, was filed into evidence at the trial herein. Upon receipt thereof the trial judge likewise stayed Foremost's third party action against the bankrupt. Under these particular facts and circumstances we cannot say he erred in so ruling.

PENALTIES AND ATTORNEYS FEES
In this regard, the applicable statute is LSA R.S. 22:658 which reads as follows:
"§ 658. Payment of claims, policies other than life and health and accident; penalties
All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees." (Emphasis added.)
As aforementioned, the trial judge herein awarded plaintiff penalties of 25% and attorney's fees in the sum of $2,250.00.
Defendant contends initially that no arbitrariness or capriciousness was shown on its part, and as a result, no penalties or attorney's fees are justified. We disagree. The record indicates the defendant insurer's failure to pay the plaintiff the actual cash value of the mobile home resulted solely from its contention that it owed a lesser sum.[2] As pointed out above, the intention of the original contracting parties (plaintiff and the defendant-insurer or its agents) was clearly manifested to be the securing of insurance for the actual cash value of the mobile home. The insurer was certainly aware, or should have been aware, that the accepted practice of its agents was at all times to issue comprehensive policies covering the full value of mobile homes. As a result the insurer was *426 unjustified in denying plaintiff's claim for $11,750.00 and penalties and attorney's fees are due.
The next question concerns the amount of penalties. The trial judge awarded penalties of 25% of $11,750.00. We opine he erred. Under LSA R.S. 22:658, 25% penalties are due only if the claim is for "losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire, theft.. .." The issue presented is whether the mobile home fits the enumerated categories. Without question, it is not an automobile, truck, or motor propelled vehicle. The phrase "and other property" has been interpreted by our courts as meaning "and the like", i.e. vehicles of the same kind or type. See Welsh v. New York Underwriters Ins. Co., 145 So.2d 376 (La.App. 3rd Cir. 1962). Plaintiff, however, contends that Louisiana law contemplates that a house trailer is a motor vehicle and that the 25% penalty clause applies to all motor vehicles. We disagree. As we read the statute (as interpreted by Welsh and the cases cited therein) the intent of the Legislature was to include in the 25% penalty provision only that class of motor driven vehicles which are capable to being used on our highways for transportation and alike purposes (i. e. automobiles, trucks, buses, motorcycles, etc.). We opine that a mobile home, which was obviously used as a house in the case herein, was not the type of vehicle contemplated. Likewise, the fact that for title registration and license purposes the State treats a mobile home as a motor vehicle, is not, in our opinion, controlling insofar as the interpretation of the particular statute herein is concerned.
Accordingly plaintiff is entitled to 12% penalties, the question now being whether same is to be computed on the amount found to be due (i.e. $11,750.00) or if a legal tender was made, the difference in that amount (i.e. $10,575.00) and the amount of plaintiff's losses.
Under the jurisprudence of this state, if the insurer conditions its offer to pay an undisputed amount on the insured's acceptance thereof in full settlement, it is not a "tender" within the contemplation of LSA R.S. 22:658, as it is not absolute and unconditional. Spano v. Emmco Ins. Co., 239 So.2d 434 (La.App. 4th Cir. 1970), writ refused, 257 La. 168, 241 So.2d 530 (1970); Guillory v. New York Fire & Marine Ins. Co., 201 So.2d 366 (La.App. 3rd Cir. 1967); Sensat v. State Farm Fire & Casualty Co., 176 So.2d 804 (La.App. 3rd Cir. 1965), writ refused, 248 La. 419, 179 So.2d 17 (1965). The check for $10,575.00, issued to the plaintiff by Foremost on September 17, 1973, contained the following provision in part: "Payee(s) by endorsement of this check acknowledge(s) settlement in full of the claim . . ." Therefore, statutory penalties of 12% are to be computed upon the entire amount of plaintiff's recovery, i.e. $11,750.00.
Insofar as attorney's fees are concerned, we conclude (as conceded by the plaintiff in brief to this court) the award of $2,250.00 is well within the trial judge's discretion. We do, however, feel that the preparation and argument of this case on appeal required additional time and labor for which plaintiff's attorney was evidently not compensated in this trial court judgment. As a result we will allow an additional $500.00 in attorney's fees. Chavis v. Maryland Casualty Company, 307 So.2d 663 (La.App. 3rd Cir. 1975); Benoit v. Travelers Ins. Co., 251 So.2d 87 (La.App. 3rd Cir. 1971).
For the above and foregoing reasons the judgment of the district court is amended by reducing the penalties from 25% of $11,750.00 to 12% of $11,750.00 and fixing the attorney's fees at $2,750.00. In all other respects the judgment is affirmed. Costs, of this appeal are assessed against defendant-Foremost Insurance Company.
Affirmed as amended.
NOTES
[1] The second policy also included "defective manufacturer" in the enunciated exclusions.
[2] The denial of coverage, based upon the erroneous interpretation of the aforementioned policy provision, was apparently raised for the first time after suit was filed at the trial on the merits.