380 So.2d 191 (1980)
Dale GAGNARD et al., Plaintiffs and Appellees,
v.
The TRAVELERS INSURANCE COMPANY, Defendant and Appellant.
No. 7333.
Court of Appeal of Louisiana, Third Circuit.
January 30, 1980.
*192 Gold, Little, Simon, Weems & Bruser, Edward E. Rundell, Alexandria, for defendant and appellant.
Knoll & Knoll, J. Eddie Knoll, Marksville, for plaintiffs and appellees.
Before CULPEPPER, DOMENGEAUX and STOKER, JJ.
DOMENGEAUX, Judge.
This is a suit for benefits under a fire insurance policy. Plaintiffs' air conditioning system was damaged by lightning. The trial judge awarded policy benefits of $3,116.50, plus 12% penalties and attorney's fees of $1,000.00. The defendant insurer appeals only as to the award of penalties and attorney's fees. Plaintiffs answered the appeal, seeking an increase in the benefit award to $5,347.56, an increase in the penalties from 12% to 25%, and an additional $1,000.00 as attorney's fees for services on appeal.
The issues on appeal are: (1) Should the loss benefits be increased? (2) Did the trial judge err in awarding penalties and attorney's fees? (3) Should additional attorney's fees be awarded for services on appeal?
The essential facts are as follows: Plaintiffs, Dale and Milburn Gagnard, own and operate a tavern and pool hall in Marksville, Louisiana. On August 20, 1978, lightning struck the building and caused damage to the air conditioning system. Dale Gagnard contacted Marsden Couvillion, who attempted *193 repairs to the unit on August 21, 1978, at a cost of $470.74, and again on September 10, 1978, at a cost of $856.48.
On September 21, 1978, the unit shut down for the third time. Couvillion then informed the Gagnards that the entire system would have to be replaced. According to the testimony at trial, the lightning caused an acid accumulation which, in this particular case, was so extreme that it could not be flushed out as had been expected. The complete system was replaced at a cost of $4,020.63. This and the previous costs, a total of $5,347.56, were paid by the plaintiffs.
It was stipulated at trial that lightning caused the damage to the air conditioning system, and that replacement was necessary.

AMOUNT OF LOSS
Plaintiffs argue on appeal that the trial court erred in not finding the defendant liable for the combined costs of repair and replacement under Section F, 1, b of the policy. This issue involves the following policy provisions:
"F. Basis of Loss Payment
"1. Applicable to Coverages A and B Unless Otherwise SpecifiedDetermination of Value of that Part of the Property Sustaining Loss
"a. Property Owned by Named InsuredThe value shall be the actual cash value of the property or the cost to repair or replace the property with material of like kind and quality within a reasonable time after loss, whichever is less.
"The foregoing provision shall not apply, however, to property for which the loss is adjusted under the `Replacement Cost Provision' hereunder or the following property for which the value shall be determined as described.

* * * * * *
"b. Replacement Cost Provision Property Owned by the Named InsuredThis provision (when applicable) applies only to a loss insured against by the STANDARD, BOARD or SPECIAL FORM, whichever applies.
"The Named Insured may elect to make claim disregarding this provision and make further claim for any additional amount brought about by this provision, provided The Travelers is notified in writing within 180 days after loss of the Named Insured's intent to make further claim.
"(1) Value of the PropertyThe value of the property shall be the lesser of the following:
"(a) the replacement cost of the property equivalent to the property sustaining the loss on the same premises and intended for the same occupancy and use; or
"(b) the amount actually and necessarily expended in repairing or replacing the property sustaining the loss and intended for the same occupancy and use.
"(2) This Provision Does Not Apply:

* * * * * *
"(f) to carpeting, awnings, air conditioners; domestic appliances or outdoor equipment;

* * * * * *
"h. Definitions
"(1) `Actual Cash Value' means replacement cost less depreciation of that part of the property sustaining loss at the time and place of loss. Depreciation includes obsolescence.
"(2) `Limit of Liability' means the limit specified in the declarations or specified in any form or endorsement made part of the policy, whichever is less, applying to the property.
"(3) `Replacement Cost' means the full cost of repair or replacement at the time and place of loss without deduction for depreciation, but does not include the cost occasioned directly or indirectly by enforcement of any ordinance or law regulating the construction, repair or demolition of any building."
*194 Section F of the policy includes two methods of determining the amount owed for a loss. Ordinarily, the value of a loss is determined under Section F, 1, a, which provides for payment of the lesser of either the actual cash value or the cost to repair or replace. This same section also provides that it does not apply where the loss is adjusted under the "Replacement Cost Provision."
Plaintiffs now contend that the Replacement Cost Provision applies. This is clearly incorrect because air conditioners are listed among the items specifically excluded from adjustment under the replacement cost provisions in Section F, 1, b(2)(f). Therefore, Section F, 1, a applies.
As defined in Section F, 1, h, (1) actual cash value means replacement cost less depreciation. Therefore, the trial court correctly awarded $3,116.50, which is the replacement cost of $4,020.63, less $804.13 for three years depreciation over a useful life of 15 years, and less the deductible of $100.00 provided in the policy.

PENALTIES AND ATTORNEY'S FEES
The second issue on appeal is the trial court's award of penalties and attorney's fees under LSA-R.S. 22:658, which provides:
"§ 658. Payment of claims, policies other than life and health and accident; penalties
All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees."
Although the system was damaged by lightning on August 20, 1978, plaintiffs made no proof of loss until October 12, 1978. They testified they simply did not think of the loss being covered by their insurance until this was suggested by an air conditioning supply salesman. Plaintiffs then contacted Andre Coco, their insurance agent in Marksville, and learned that the loss was covered by the fire policy issued by Travelers. They filed a claim and proof of loss with Coco on October 12, 1978.
Mr. Ted Duggan, local adjuster for Travelers, received the proof of loss on October 15, 1978. He examined the air conditioning system on October 17, 1978. Duggan testified that since the compressor which was damaged by lightning had been replaced and removed from the premises, he was unable to determine whether it had been damaged by lightning. He also noted there was no "burned smell" in the system.
Duggan's file notes that on November 1, 1978, he received a call that plaintiffs had obtained a "third letter from some engineer to say that the compressor had lightning damage." Apparently, this refers to a letter dated November 3, 1978, from Mr. Raymond J. Dunn, an electrical engineer, stating that he had inspected the air conditioning system and was of the opinion that a voltage surge produced by lightning had damaged it. This same opinion had previously been expressed by Mr. Couvillion, the air conditioning repairman who had performed the repairs and finally replaced the system.
*195 Duggan testified he was still not satisfied with the proof of loss, so he contacted a Mr. Ray Gates, an air conditioning repairman, who expressed the opinion that any compressor damage by lightning could have been repaired. Duggan's file contains a notation dated November 6, 1978, that Gates "feels the unit was not cleaned out properly."
In about mid-November, 1978, Duggan received copies of the letter from Mr. Dunn, the electrical engineer. Duggan already had Couvillion's opinion that the damage was caused by lightning. So Duggan then contacted plaintiff and offered to settle the claim for $1,600.00. Duggan's file indicates this offer was rejected, and that plaintiff demanded $2,500.00.
Plaintiffs then employed an attorney who wrote a letter of demand to Duggan dated November 28, 1978, enclosing copies of the repair bills, replacement bill, and opinions of the experts that the damage was caused by lightning. Duggan's file contains a note dated December 5, 1978, that he discussed the claim with Traveler's attorney and they decided to make an offer of $1,563.00. Plaintiffs' attorney denies that this alleged oral offer was ever actually made. The transcript of evidence contains another letter of demand for payment of $5,347.00 by plaintiffs' attorney of date, December 12, 1978. Receiving no response from this demand, plaintiffs' attorney filed this suit on January 8, 1979.
On March 1, 1979, defendant tendered to plaintiffs' attorney a check in the sum of $1,520.15 in settlement of the claim. This offer was rejected, and the check returned.
The trial judge found defendant was arbitrary and capricious under LSA-R.S. 22:658 in failing to pay the claim within 60 days after receipt of satisfactory proof of loss. We conclude the record amply supports this finding of fact. Even if the original proof of loss filed on October 12, 1978, was not satisfactory, within the meaning of LSA-R.S. 22:658, the subsequent letter by Mr. Dunn, the electrical engineer, which corroborated Mr. Couvillion's previous opinion, both of which were received by defendant's adjuster at least by mid-November of 1978, constituted satisfactory proof of loss. After receiving this proof, the adjuster did nothing further to investigate the claim, except possibly to talk again to Mr. Gates. The record is not clear as to whether the adjuster talked to Mr. Gates before or after he tried to negotiate a settlement for the sum of $1,600.00. Defendant had no serious defense to the contention that the damage was caused by lightning. As stated above, it was stipulated at the trial that lightning caused the damage.
Nor can defendant justify its failure to pay the claim by the alleged offer of $1,600.00, or by the tender of $1,520.00 which was not made until after this suit was filed. For the reasons stated above, the plaintiffs were entitled under the provisions of the policy to much more than defendant offered. We affirm the finding that plaintiff is entitled to penalties and attorney's fees.
The next question concerns the amount of penalties. Plaintiffs argue that the trial judge erred in awarding penalties of 12%, contending that penalties of 25% are due. Plaintiffs are in error. The last sentence of LSA-R.S. 22:658, which imposes a 25% penalty, applies only to motor propelled vehicles and like property. Witherwax v. Zurich Insurance Company, 315 So.2d 420 (La.App. 3rd Cir. 1975); Welch v. New York Underwriters Insurance Company, 145 So.2d 376 (La.App. 3rd Cir. 1962).
The defendant questions the sum upon which penalties are due, arguing that there was an unconditional tender of $1,520.15 on December 5, 1978, within 60 days of plaintiffs' proof of loss. The trial court obviously resolved the issue of the alleged December offer against defendant. Upon examination of the record, we cannot say the trial court was clearly wrong. As was stated in Witherwax, supra:
"Under the jurisprudence of this state, if the insurer conditions its offer to pay an undisputed amount on the insured's acceptance thereof in full settlement, it is not a `tender' within the contemplation of *196 LSA-R.S. 22:658, as it is not absolute and unconditional. Spano v. Emmco Ins. Co., 239 So.2d 434 (La.App. 4th Cir. 1970), writ refused, 257 La. 168, 241 So.2d 530 (1970); Guillory v. New York Fire & Marine Ins. Co., 201 So.2d 366 (La.App. 3rd Cir. 1967); Sensat v. State Farm Fire & Casualty Co., 176 So.2d 804 (La.App. 3rd Cir. 1965), writ refused, 248 La. 419, 179 So.2d 17 (1965)."
Therefore, penalties of 12% are due upon the sum of $3,116.50, not including legal interest due thereupon for nonpayment.[1]
Concerning the issue of the excessiveness of attorney's fees, it was stated in Hebert v. Loffland Brothers, 363 So.2d 969 (La.App. 3rd Cir. 1978) that:
"... it is well settled that the amount awarded therefor is left largely to the discretion of the trial court. Artique v. Louisiana Farm Bureau Mutual Insurance Company, 339 So.2d 880 (La. App. 3rd Cir. 1976)."
A review of the record indicates that the amount awarded was not unreasonable. Viewing the attorney's fee award by the trial court in the factual context of this case, and considering the broad discretion which is afforded the District Judge in such matters, we conclude that said award is neither inadequate nor excessive, and hereby affirm same. Carter v. Roy O. Martin Industries, Inc., 336 So.2d 1002 (La.App. 3rd Cir. 1976).
Plaintiffs also request additional attorney's fees for the legal services required on appeal. An increase in attorney's fees for services on appeal is usually awarded when the defendant appeals and obtains no relief on appeal, and the plaintiff requests it in accordance with proper appellate procedure. The basis for awarding additional attorney's fees is that the litigant successful at the trial level must incur additional expenses, which would not have otherwise been incurred, in order to protect his rights on appeal. Horn v. Vancouver Plywood Corporation, 322 So.2d 816 (La.App. 3rd Cir. 1975). In this case, plaintiffs are not simply protecting their rights relative to defendant's appeal, but they are also seeking, by answer to the appeal, additional relief denied at the trial level, viz., an increase in the award of the trial court from the sum of $3,116.50 to the sum of $5,347.56, and an increase in the percentage of penalties from 12% to 25%. As shown herein, plaintiffs' request for additional relief not granted at the trial level is being denied on this appeal, therefore, under these circumstances, we find that additional attorney's fees for services rendered on appeal are not warranted. Conlay v. Houston General Ins. Co., 370 So.2d 196 (La.App. 3rd Cir. 1979). (The Louisiana Supreme Court has granted writs in Conlay, at 371 So.2d 618, but no decision has yet been rendered by that court. The substantial issue in Conlay was the question of plaintiff's disability.)
For the above reasons the judgment of the District Court is affirmed. Costs on appeal are assessed one-half to plaintiffs and one-half to defendant.
AFFIRMED.
CULPEPPER, J., dissents in part and assigns written reasons.
CULPEPPER, Judge, dissenting in part.
I dissent from that portion of the majority opinion which denies to the plaintiff additional attorney's fees for services rendered by his attorney on appeal. Although I agree with the general statement in Conlay v. Houston General Insurance Company, 370 So.2d 196 (3rd Cir. 1979), that "[t]he basis for awarding additional attorney's fees is that the litigant successful at the trial level must incur additional expenses, which otherwise would not have been incurred, in order to protect his rights on appeal.", it is my view that even applying this rule to the present case, the plaintiff is nevertheless entitled to at least an additional $500 for services rendered by his attorney on appeal.
In the present case, the plaintiff did not appeal. The defendant-insurer appealed, *197 seeking reversal of the trial court's award of 12% penalties and $1,000 for attorney's fees. To protect this award by the trial court, it was necessary for the plaintiff to pay his attorney for additional services rendered on appeal. Although it is true that plaintiff answered the appeal, seeking an increase in the award for insurance benefits and an increase in the penalties from 12% to 25%, both of which we deny, the principal issue on appeal is whether the trial court erred in granting penalties and attorney's fees. As I read the record and the briefs, the relief sought by plaintiff in his answer to the appeal did not present serious issues. Of course, it would be speculative to say that plaintiff would not have sought appellate relief, had not defendant appealed, but, nevertheless, it is clear that the principal issue on appeal is the award of penalties and attorney's fees by the trial judge. On this issue, the plaintiff has prevailed on appeal.
I fear the effect of the majority ruling will be to unduly discourage answers to the appeal. An appellee will be less likely to answer the appeal at the risk of denial of an additional fee for services rendered by his attorney on appeal.
For the reasons assigned, I respectfully dissent in part.
NOTES
[1] While legal interest upon the unpaid penalties and attorney's fees, themselves, may be due, the 12% penalties are to be calculated upon the amount of the "loss", alone. Doty v. Central Mutual Insurance Company, 186 So.2d 328 (La. App. 3rd Cir. 1966).