404 So.2d 500 (1981)
Lelah B. KLEAS, et al., Plaintiffs-Appellees,
v.
M. L. MAYFIELD, et al., Defendants-Appellants.
No. 8323.
Court of Appeal of Louisiana, Third Circuit.
July 22, 1981.
Orders on Denial of Rehearing September 23, 1981.
*501 G. William Jarman of Sanders, Downing, Kean & Cazedessus, Baton Rouge, and Preston N. Aucoin, Ville Platte, for defendants-appellants.
Beyt & Beyt, Raymond A. Beyt, Lafayette, for plaintiffs-appellees.
James T. Skelly, New Orleans, David R. Stevenson, Houston, Tex., and Fruge & Vidrine, Jack C. Fruge, Ville Platte, for defendants-appellees-appellants.
Before DOMENGEAUX, GUIDRY and CUTRER, J.,
DOMENGEAUX, Judge.
Plaintiffs-lessors, Lelah Mae Broussard Kleas and Charles L. Broussard, sought and received a judgment in the trial court ordering defendants, M. L. Mayfield and Gulf Oil Corporation, as record owners, to grant a recordable release of an oil, gas, and mineral lease granted by their now-deceased mother, Lelah Gournay Broussard, on January 9, 1940, on her undivided interest in certain lots in that tract of land in Evangeline Parish known as the Easton Townsite. The trial court found that this lease expired under its own terms in 1967 when the unit well holding the lease, the Easton Townsite Unit No. 2 well, went off production and no effort was made to restore production to the well within sixty days as provided under the terms of the lease. Additionally, plaintiffs were awarded a judgment for attorney's fees against Mayfield and Gulf because of their failure to grant a recordable release after due demand. These fees were set by the court in the amount of $7,500.00.
Plaintiffs' claim for damages, however, was denied. This claim consisted of interest on working interest funds due plaintiffs from that well known as the Inexco Oil Company-J. Reed No. 1 Well which well is located on property adjacent to the Easton Townsite and presently unitized therewith. Those funds have been suspended by the operator of the well, Inexco Oil Company, ostensibly because of the dispute between Mayfield and the plaintiffs.
This case was tired on the merits on April 25, 1980, with the written opinion filed on June 30, 1980, and a judgment rendered on September 16, 1980.

THE ISSUES
Mayfield has appealed to argue that (1) the lease has not expired and should therefore not be released; (2) the doctrine of equitable estoppel should have been applied to prevent the plaintiffs from complaining that the lease had terminated; (3) attorney's fees should not have been awarded; and (4) the depositions of two non-parties should have been excluded from evidence.
Gulf has appealed from the court's determination that it is liable to plaintiffs for attorney's fees. Gulf has also appealed from the court's dismissal of its third-party demand against Mayfield, wherein Gulf maintains that Mayfield is obliged to hold Gulf harmless in the event that judgment is rendered against Gulf in this suit.
Plaintiffs answered the appeal seeking a reversal of that portion of the judgment denying plaintiffs' damages. Plaintiffs also *502 seek an increase in the amount of attorney's fees for services rendered at trial and for additional services rendered on appeal.
For the reasons assigned below, we affirm all portions of the judgment except that we reverse the trial court's dismissal of Gulf's third party demand against Mayfield, and render judgment in Gulf's favor on that demand.

FACTS
On the trial of this case all parties entered into a Joint Stipulation of Fact. It was stipulated that Lelah Gourney Broussard, plaintiffs' mother, granted to one S. P. Benckenstein on January 9, 1940, an oil, gas and mineral lease covering her undivided interest in certain lots in the Easton Townsite for a primary term of five years. That lease was assigned to the defendant, Gulf, on February 12, 1940. Pursuant to the pooling provisions contained in the lease, Gulf created a declared unit on November 14, 1941, by pooling the lease with other leases in the area. This unit covered a portion of the Easton Townsite and was designated as the Easton Townsite Unit No. 2. It was stipulated that operations were commenced on land contained in the unit but not covered in the disputed lease, which resulted in the successful completion of a well on December 12, 1941. Gulf thereafter began producing the unit well, labeling it the Easton Townsite Unit No. 2 Well.
It was established that Gulf maintained and produced the unit well until 1951, at which time it sublet the leases in the unit, including the disputed lease, to Mayfield, Gulf retaining in that act a right to receive before payout a "net yield" and thereafter a "net profit" from the operation of the leases.

DID THE LEASE EXPIRE?
The January 9, 1940 lease provided:
"* * *
2. Subject to the other provisions herein contained, this lease shall be for a term of five (5) years from this date (called `primary term') and as along thereafter as oil, gas, sulphur and other mineral is produced from said land or land with which said land is pooled hereunder.
* * * * * *
6. ... if after discovery of oil, gas, sulphur or other mineral, the production thereof should cease from any cause, this lease shall not terminate if Lessee commences additional drilling or reworking operations within 60 days thereafter...."
It was established by the testimony of plaintiffs' witness, Mr. Charles G. Dannelly, former Production Superintendent for Mayfield, and the man in charge of the Easton Townsite Unit No. 2 Well located in the Pine Prairie Field, that by August of 1967, the Townsite Well was producing less than three barrels of oil per day. Efforts to increase oil production, first, by pumping gas from an extraneous source into the well thereby forcing the oil out, and, second, by installing a "volume chamber" in the well, met with very limited success. Mr. Mayfield testified that any gas in the well had long since been depleted by this time.
Due to this low rate of production, Mr. Dannelly recommended and Mr. Mayfield agreed to abandon the Easton Townsite Unit No. 2 Well as non-commercial. As indicated by the testimony of Mr. Dannelly, it was costing more to pump gas into the well than the value of the oil that was being produced. Thus, on August 1, 1967, Mr. Dannelly wrote the Department of Conservation requesting that the allowable for the unit well, which is the authority to produce granted by the Department of Conservation, be cancelled effective August 1, 1967, as the well had declined below an economic level. As a result of this letter, the allowable for the unit well was cancelled on August 7, 1967, effective August 1, 1967, due to the well being off production.
By letter to Mr. Mayfield dated August 1, 1967, Mr. Dannelly confirmed their earlier conversation in which he recommended the abandonment of the unit well and informed Mr. Mayfield of the effective date of the *503 well's abandonment. Pursuant to the 1951 assignment from Gulf, Mr. Mayfield, by letter dated August 22, 1967, informed Gulf of the decision to plug and abandon the Easton Townsite Unit No. 2 Well due to the non-commercial production.
As indicated by Mr. Dannelly's testimony and by his letter to Mr. Mayfield of August 1, 1967, noted above, though no cement was actually placed in the shaft of the well, the high pressure gas line going to the well for the gas lift was plugged as well as the flow line which allowed the oil to be produced from the well. Mr. Dannelly testified that the well could not produce in this condition. Mr. Mayfield also testified to this fact.
Mr. Dannelly testified that no effort was made to restore production to the unit well within sixty days after its abandonment of August 1, 1967, as required by the terms of the lease. Mr. Mayfield confirmed this fact. Mr. Dannelly testified that, in fact, nothing was done to the well itself until August of 1968, almost one full year later when the well, pursuant to Mr. Mayfield's direction, was converted by Mr. Dannelly to the non-productive use of a "bottle" well.[1]
The above evidence clearly demonstrates that Mr. Mayfield made no effort to restore production through additional drilling or reworking operations within sixty days after abandonment of the well occurred on August 1, 1967. The trial court therefore ruled that the lease granted by plaintiffs' mother lapsed of its own accord. We find this ruling clearly supported by the evidence.

EQUITABLE ESTOPPEL
Mayfield argues that the plaintiffs should be estopped from asserting that the lease has terminated since the plaintiffs knew or should have known of the use by Mayfield of the Easton Townsite Well as a gas storage well and knew or should have known of his re-entry into the well in 1974 to re-establish production. The trial court rejected this argument and the evidence supports that decision.
From August 1, 1967 to August of 1974 the well remained in a physical condition in which it could not produce. During this seven year period no payments of any kind were made to the plaintiffs.
In July of 1974, Mayfield tendered to each plaintiff, and other landowners at Easton, what he termed a "storage" rental of $27.85. He maintained that this payment was for the use of the Easton Townsite Unit No. 2 Well as a "bottle" well, although he admitted that neither at the time of this payment, nor at anytime, has he had a "storage" or "bottle well" agreement with the plaintiffs, their mother, or with any landowner at Easton.
Attached to each of the "storage" rental checks was a notation that the checks covered each landowner's share of the use of "this well as a `bottle well' for gas lift gas in the Pine Prairie Field ...." The term "this well" referred only to the lease number "210" which appears on the apron of the check. Other than this lease number, there was no reference to the well or the property. Plaintiffs accepted and cashed these checks.
Plaintiffs, both of whom reside in Texas, testified they inherited the subject property and other property when their mother died in 1969. At the time they received the "storage" payments in 1974, plaintiffs were receiving royalty checks from Mayfield for interests in other wells producing at the Pine Prairie Field. They did not then know that the property number "210" applied to the Easton Townsite.
*504 In spite of the fact that the Easton Townsite Unit No. 2 Well had not produced in seven years, Mayfield re-entered the well in August of 1974. The well began producing in 1976, at which time Mayfield tendered to plaintiffs a division order dated January 1, 1976. Neither plaintiff signed the order.
Both plaintiffs testified that they had no knowledge of Mayfield's re-entry into the well in 1974 and, in fact, had no knowledge of the well itself or of Mayfield's activities until after they received his division order covering the well in January of 1976. Both also testified that after they learned in 1976 of Mayfield's re-entry into the well in 1974, they either returned the checks tendered by Mayfield or refused to cash them.
Mayfield testified that he had no knowledge of whether either plaintiff knew of his reworking operations in 1974. He also testified that the lack of response from the Easton landowners to his storage payment in 1974 prior to his work on the well had no influence on his decision to re-enter the well.
Under the circumstances above described, we do not believe Mayfield's estoppel argument is well-founded. Plaintiffs did not know of Mayfield's use of the Easton Townsite Unit No. 2 Well as a storage well nor did they know of the well or Mayfield's re-entry into the well in 1974 until they received a division order in 1976. Since then plaintiffs have consistently opposed Mayfield's actions in continuing his operations as though the lease had not expired. Furthermore, except by way of the note attached to the "storage" payments, which note did not refer to the well, Mayfield has not demonstrated how plaintiffs should have known of the use of the well as a gas storage well or of Mayfield's re-entry into the well. Therefore, Mayfield's contention, that plaintiffs should be estopped from asserting that the lease has expired, is rejected.

ATTORNEY'S FEES
The Mineral Code authorizes the awarding of a reasonable attorney's fee in instances in which the former owner of an expired mineral right refuses to furnish a recordable release of the expired mineral right within thirty days after written demand by the person in whose favor the right has been extinguished or terminated.
La.R.S. 31:206 provides:
"When a mineral right is extinguished by the accrual of liberative prescription, expiration of its term, or otherwise, the former owner shall, within thirty days after written demand by the person in whose favor the right has been extinguished or terminated, furnish him with a recordable act evidencing the extinction or expiration of the right."
La.R.S. 31:207 provides:
"If the former owner of the extinguished or expired mineral right fails to furnish the required act within thirty days of receipt of the demand, he is liable to the person in whose favor the right has been extinguished or expired for all damages resulting therefrom and for a reasonable attorney's fee incurred in bringing suit."
Plaintiffs made written demand upon Mayfield and Gulf for a recordable release of the January 9, 1940 lease by letter dated July 21, 1977. However, no recordable release was supplied by either Mayfield or Gulf within thirty days or at any time thereafter.
To establish their claim that attorney's fees were incurred in bringing suit, plaintiffs offered the affidavit of Mr. Bernard E. Beyt, one of their attorneys, in which he showed over 290 hours of preparation and work conducted by plaintiffs' attorneys in connection with this suit in the trial court. On the basis of this evidence the trial court awarded the plaintiffs $7,500.00 in attorney's fees. The amount represents a reasonable attorney's fee for work done at the trial level and will not be disturbed.
Plaintiff's request for additional attorney's fees on appeal will be denied because plaintiffs have not appeared simply to answer defendants' appeal but have appealed *505 in their own right to request damages, a request which we deny for reasons expressed in the next section of this opinion.
The basis for awarding additional attorney's fees for services on appeal is that the litigant successful at the trial level must incur additional expenses, which would not have otherwise been incurred, in order to protect his rights on appeal. When the plaintiff seeks additional relief denied at the trial level, and such relief is denied on appeal, an increase in attorney's fees for services rendered on appeal is not warranted. Gagnard v. Travelers Insurance Company, 380 So.2d 191 (La.App. 3rd Cir. 1980); Conlay v. Houston General Insurance Company, 370 So.2d 196 (La.App. 3rd Cir. 1979), writ granted La., 371 So.2d 618 (no decision yet rendered).

DAMAGES
As damages, plaintiffs claim they are entitled to interest on funds due to them by a nonparty to the suit, Inexco Oil Company, which has withheld these funds from the plaintiffs on its own initiative, and for a reason not conclusively established by the evidence. The trial court rejected plaintiff's claim for these damages and the record amply supports the court's decision.
The only evidence bearing on plaintiffs' claim for damages is two depositions of Inexco Oil Company employees. Counsel for Mayfield objected to these depositions on the grounds that they were irrelevant, immaterial, and did not sufficiently establish plaintiffs' claim. Subject to the objection, the judge admitted the evidence into the records. Thereafter, he denied plaintiffs' claim for damages for reasons not divulged.
On appeal, Mayfield argues that the judge erred in allowing the depositions to be admitted into evidence. Specifically, Mayfield contends that the depositions should have been excluded because plaintiffs offered no facts under La.C.C.P. Art. 1450[2] which warrant the use of depositions of the Inexco employees, who were nonparty witnesses. The record reflects that the parties did not stipulate to the general use of the depositions. Further, when plaintiffs' counsel offered the depositions as evidence, he made no effort to establish the grounds for admissibility thereof. We find no other evidence in the record which would render the depositions admissible. Therefore, we agree with Mayfield that the depositions should have been excluded from evidence. Maricle v. Cloud, 341 So.2d 29 (La. App. 3rd Cir. 1976); Jacob v. Laborde, 280 So.2d 621 (La.App. 4th Cir. 1973). We note that inasmuch as the trial judge admitted the depositions subject to Mayfield's objection and then denied plaintiffs' damages, he might have decided the depositions were inadmissible after all. However, even if the depositions were admissible, we could not say the trial judge erred in denying damages.

*506 GULF'S POSITION
The trial court held Mayfield and Gulf liable to the plaintiffs for attorney's fees and dismissed, without any reasons, Gulf's third party demand against Mayfield.
Gulf contends that it is not liable to the landowners for attorney's fees because Mayfield assumed all expenses and implied lease obligations and became directly responsible to the lessor for performance of these obligations under La.R.S. 31:128. Gulf's position vis-a-vis the landowners is untenable.
La.R.S. 31:129 plainly provides:
"An assignor or sublessor is not relieved of his obligations or liabilities under a mineral lease unless the lessor has discharged him expressly and in writing."
Herein the landowners (lessors) did not discharge Gulf, a sublessor,[3] from its obligations or liabilities under the lease. One such obligation, provided by statute (La. R.S. 31:206-207, supra) is that of providing to the lessors a recordable release of an expired mineral right within thirty days of a demand therefor tendered by the lessors (or other party in whose favor the right expired). Failure to do so subjects the former owner of the expired right to payment of reasonable attorney's fees and damages.
In the instant case Gulf did not release its interest in the lease within thirty days after demand was made by plaintiffs. Since Gulf was not discharged by the landowners, it is clearly liable to the plaintiffs under 31:129 for failure to provide a recordable release. Therefore, the trial court correctly held that Gulf was, along with Mayfield, solidarily liable to the plaintiffs for the payment of attorney's fees.
Gulf argues in the alternative that if it is liable to the plaintiffs for attorney's fees, then it is entitled to reimbursement or indemnification from Mayfield because Mayfield contracted to indemnify and hold harmless Gulf from any damage or expense arising out of his failure to discharge the duties and obligations of the original lessee.
The record substantiates Gulf's view that it is entitled to reimbursement or indemnification from Mayfield.
Section VII, paragraph 1 of the sublease from Gulf to Mayfield provides:
"1. Grantee [Mayfield] specifically assumes all of the duties and obligations, both express and implied, of the original lessee under the terms of the hereinabove described oil, gas and mineral leases and of the instruments to which this assignment is made subject, and binds and obligates himself to comply with the terms thereof, and hereby agrees to indemnify and hold harmless Grantor [Gulf] from any character of loss, damage or expense due to, or arising out of, the failure to Grantee to faithfully perform and discharge the aforesaid duties and obligations. Grantee binds and obligates himself to protect the lands covered by the aforesaid leases and this agreement from drainage by wells on adjoining lands."
As aforementioned, one of the legal duties imposed upon the lessee is to provide a recordable release of an expired lease. However, neither Mayfield nor Gulf ever provided the requested release. As a result, both were held liable to plaintiff for attorney's fees. In light of Mayfield's commitment to hold Gulf harmless from any character of loss, damage, or expense due to Mayfield's failure to perform and discharge the duties and obligations of the original lessee, we hold that Mayfield should reimburse or indemnify Gulf for whatever amount Gulf has paid unto the plaintiffs pursuant to the trial court judgment.
Mayfield argues that Gulf is equally responsible for attorney's fees because it was notified and approved the use of the Townsite Well as a gas storage well from 1967 to 1974, then was notified of and approved the re-working of the well in 1974. Further, Mayfield argues, if the lease is upheld, *507 Gulf's letter to Mayfield authorizing him to release the lease would not have the effect of divesting Gulf of its interest in the well. Instead, Gulf would stand to profit by Mayfield's defense of the lease. Because of the following circumstances, we reject the contention that Gulf should be held equally responsible for attorney's fees.
By letter dated August 22, 1967, Mayfield recommended to Gulf that the well be plugged and abandoned and asked Gulf to either approve the abandonment or request that the lease be "assigned" back to Gulf.[4] By letter dated December 7, 1967, Gulf approved the abandonment. However, on June 24, 1968, Mayfield wrote to Gulf indicating that the well had not been plugged and abandoned, despite Mayfield's receipt of Gulf's letter approving the abandonment. Instead, Mayfield sought Gulf's approval to use the well as a "storage" or "bottle" well. Gulf approved. Later Mayfield sought and received Gulf's approval to rework the well in 1974.
Soon after the plaintiffs demanded a release of the lease from Gulf and Mayfield, Gulf seemed eager to oblige. Gulf believed the lease had expired; sought to persuade Mayfield to release the lease; and even offered Mayfield its interest in the lease in exchange for Mayfield's assurance that it would hold Gulf harmless.
To summarize, Gulf was willing to abandon the well in 1967 but was later told that the well had not been abandoned. After it first learned from plaintiffs, through their letter, that a dispute existed as to whether or not the lease had expired due to the 1967 abandonment, Gulf took and maintained the position that the lease had terminated. Only Mayfield's refusal to provide a release prompted this litigation. Under these circumstances, Gulf is entitled to reimbursement or indemnification from Mayfield, particularly since Mayfield agreed in the sublease agreement to hold Gulf harmless from any character of loss, damage, or expense precipitated by Mayfield's failure to perform the lease obligations.

DECREE
For the above and foregoing reasons, the portion of the judgment of the district court which dismissed the third party demand of Gulf Oil Company against M. L. Mayfield is reversed and it is hereby Ordered, Adjudged, and Decreed that there be judgment herein in favor of Gulf Oil Company and against M. L. Mayfield to the extent of any payment which Gulf Oil Company has made to or hereafter makes to the plaintiffs, Lelah Mae Broussard Kleas and/or Charles L. Broussard, in satisfaction of the September 16, 1980 judgment awarding plaintiffs $7,500.00 as attorney's fees. In all other respects the judgment is affirmed. Costs on appeal are assessed one-half to M. L. Mayfield and ¼th to Gulf Oil Company and ¼th to plaintiffs.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
GUIDRY, J., concurs and assigns reasons.
GUIDRY, Judge, concurring.
I do not agree that a plaintiff, who by answer to an appeal seeks relief denied at the trial level, is not entitled to an increase in attorney's fees for services rendered on appeal, if the relief prayed for in answer is denied. Rather, my views on this issue coincide with those expressed by Judge Culpepper in his dissent in Gagnard v. The Travelers Insurance Company, 380 So.2d 191 (La.App. 3rd Cir. 1980). I am able to concur in the result reached on this point, *508 however, because in my view the amount awarded by the trial court as attorney's fees is adequate to compensate for services rendered both at the trial level and on appeal. In other respects I agree with the opinion as authored.

ON APPLICATION FOR REHEARING AND MOTION FOR CLARIFICATION
PER CURIAM.
The District Court has not made a determination as to the ownership of the funds deposited by defendant-appellant Koch Oil Company in the Registry of the Clerk of Court's Office, Parish of Evangeline, Thirteenth Judicial District Court. Therefore, this matter is not before us. Furthermore, appellants Mayfield and Koch are under the District Court's order to grant accountings.
With this Per Curiam, the application for rehearing filed by appellant Mayfield is denied, as is the Motion for Clarification of Judgment filed by appellant Koch Oil Company.
NOTES
[1] Mr. Dannelly testified that this conversion in August of 1968 to a "bottle" well was accomplished by reconnecting the high pressure gas line back into the casing of the well so that the gas would flow in and out of the shaft of the well as the pressure varied on the gas lift system. This use, as Mr. Dannelly indicated, did not allow the Easton Townsite Unit No. 2 Well to produce, and in fact rendered it incapable of production as gas from an extraneous source was simply allowed in and out without the production of oil from the well. Thus, his testimony indicated that the well was used merely as oil field equipment and not as a producing oil well.
[2] Since neither deponent was a party or acting on behalf of a party, and the depositions were not used for the purpose of contradicting or impeaching the deponents (the deponents did not appear as witnesses), then only paragraph 3 of Article 1450 is applicable:

"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
* * * * * *
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."
[3] Gulf claims it is an assignor. Although Gulf's agreement with Mayfield is styled an "assignment", it is really a sublease because of Gulf's retention of a "net profits interest" and right of reversion. Cameron Meadows Land Company v. Bullard, 348 So.2d 193 (La.App.3rd Cir. 1977). See also the pertinent comment under La.R.S. 31:127.
[4] Section VII, paragraph 9 of the sublease agreement provides:

"9. Grantee [Mayfield], shall neither release, surrender nor abandon the aforesaid leases, nor allow the same to expire under their own terms, without the written consent of Grantor [Gulf]; however should Grantee desire to surrender, release or abandon said leases, or any of them, or allow them to expire under their own terms, it shall give Grantor forty-five (45) days written notice of such intention and if Grantor fails or refuses to consent in writing to such release, surrender or abandonment within thirty (30) days after receipt of such notice, then Grantee shall reassign to Grantor such lease and be thereby relieved of all future obligations hereunder."