278 So.2d 177 (1973)
Walter P. ADLER
v.
HOSPITAL SERVICE ASSOCIATION OF NEW ORLEANS.
No. 5474.
Court of Appeal of Louisiana, Fourth Circuit.
May 15, 1973.
Rehearings Denied June 5, 1973.
Writs Refused August 17, 1973.
*178 Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Albert H. Hanemann, Jr., New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel, Donald Collins, New Orleans, for defendant-appellee.
Before SAMUEL, LEMMON and GULOTTA, JJ.
GULOTTA, Judge.
This is a suit against Hospital Services Association (Blue Cross) for the payment of the full amount of surgeons' fees, as well as for statutory penalties and attorney's fees. The trial judge denied the claim for reimbursement of the full amount of the fees submitted and only allowed $1,616.00, or that portion of the fees that Blue Cross agreed to pay under the provisions of the policy, plus $275.20 for a prosthetic device, a total of $1,891.20. *179 Penalties and attorney's fees were denied. Plaintiff appeals.
Plaintiff underwent three operations on August 1 and 2, 1968 for the removal of arterial clots in the lower right leg and foot. An amputation of the extremity, above the knee, was performed in a fourth operation on August 5, 1968.
The general surgeons who performed the operations charged the plaintiff a fee of $4,359.00. Plaintiff paid the amount of the bill submitted and subsequently made a claim against Blue Cross for reimbursement. Blue Cross refused to pay the full amount claiming that the customary and reasonable bill (under the contract) for services rendered to plaintiff amounted to $2,320.00. Defendant sent a check to Adler in the sum of $1,616.00 for the surgeons' fees and $275.20 for a prosthetic device.[1] Adler was covered under the policy by two provisions; (1) the base policy which provided $300.00 for payment of surgical fees and (2) the major medical which specified that, after the deduction of the amount paid under the base provisions of the policy, Blue Cross would pay 80 percent of the balance. In the instant case, 80 percent of the balance amounts to $1,616.00.
It is plaintiff's contention that the seriousness of the operation, particularly the post-operative complications, justify the amount of the surgical bills submitted. In support of his position, plaintiff offered the testimony of the treating physicians together with a letter from the Orleans Parish Medical Society Arbitration Committee.
Plaintiff's claim for attorney's fees and penalties is based upon Blue Cross's failure to make payment[2] or an unconditional tender of the amount which they admittedly owed under their interpretation of the policy. It is plaintiff's contention that while a tender was made, it was a conditional one which, if accepted, would have prejudiced plaintiff's claim to assert his right to the difference.
Defendants, on the other hand, claim that plaintiff failed to submit supportive evidence of competent medical experts, in addition to the testimony of physicians who rendered the service, as to the reasonableness of the surgeons' fees charged.
Defendants insist further, in denying that penalties and attorney's fees are owed, they made a tender of the amount found by the trial judge to be owed. They dispute plaintiff's claim that the offer was conditional. In support of their position, they point out the check offered in payment contained no recitation to the effect it was being offered conditionally.
We are presented first with the question of whether the amount of the surgeons' bill ($4,359.00) for the services performed is reasonable according to the terms of the policy, and secondly whether plaintiff is entitled to attorney's fees and penalties. In contest also is whether the $100.00 deductible provisions of the policy apply on *180 the purchase price of a required prosthetic device.

CUSTOMARY AND REASONABLE
Involved here is the interpretation of Article II(C) of the supplemental agreement for major medical coverage which provides under subsection (a), among other things, for payment based on "Customary and reasonable charges for services of Physicians and surgeons, including specialists."
The reasonableness of a particular medical fee depends on what is customary in a community for similar operations involving similar pre-operative and post-operative procedures and complications.[3]
It must be made clear, however, that we are concerned only with the reasonableness of the surgeons' fees vis a vis the extent of the responsibility of Blue Cross for payment under the policy, not the reasonableness of the amount of the bill as between the surgeon and the patient. Our conclusion, therefore, must be based on that fee which is customary and reasonable for the treatment which is customarily required by the average person because of his condition. If the condition of Adler demanded the extraordinary treatment given, then Blue Cross is responsible for the payment of the full amount for the treatment of that condition. If, on the other hand, Adler himself made additional demands for reasons other than his condition, then Blue Cross cannot be made to bear that expense.
We are convinced from the evidence that the amount of the bill submitted to Adler is well in excess of that which would be charged to the average person undergoing similar surgery and post-operative complications and, therefore, is not customary and reasonable as contemplated under the policy.
Dr. William Ogden, one of the general surgeons who performed the operations, admitted that the bill is higher than the ordinary charge for the operative procedure. He stated that the bill was based on several factors, among which are Adler's financial situation, the seriousness of the illness, the demands of the condition and the demands of "Mr. Adler himself." According to Dr. Ogden, he considered the California Relative Scale in setting the fee but did not use it as the basis for his bill.[4] He also consulted Dr. Charles Pearce, who also performed one of the operations, before setting the fee. While discussing the basis for determining the amount of the bill, it is significant that Dr. Ogden stated that "Adler demanded more attention than maybe another person would." In a letter to the Chairman of the Arbitration Committee of the Orleans Parish Medical Society, Dr. Ogden pointed out that Adler was a "severely demanding" person, and his affluence had some effect on the amount charged. He added that Adler's wealth was not, however, the principal factor. Dr. Ogden further stated that plaintiff required more attention "then the usual or customary and demanded more than required (and that may be an understatement) throughout his hospital stay." According to Dr. Ogden, plaintiff demanded and received more care than would be necessary for at least two, and probably three, other patients under identical circumstances. This, added Dr. Ogden, was the principal reason for the charges made.
James Wetzel, Vice President of Blue Cross, stated that the processing of the surgical fees indicated the bill was considerably higher than the community profile indicated for the average; and because of this belief, he submitted the bill to the Medical Committee of the Blue Cross for review. This committee consists of five physicians, including the President of the *181 Orleans Parish Medical Society. After reviewing the claims of the surgeons, a breakdown of the charges and copies of the operative procedure obtained from Touro, but without consulting the two surgeons whose bills are being questioned, the committee concluded that a fee of $2,320.00 is reasonable. According to Wetzel, the Committee, in addition to considering the records of Touro, considered the community profile, claims of other physicians involving similar cases, and information from the California Relative Value Study.
However, plaintiff claims that the Arbitration Committee of the Orleans Parish Medical Society in an opinion requested by Adler through Blue Cross stated that the fee was "high"; however, special circumstances justified the fee charged. We place little weight or significance on this opinion. This opinion has value and applicability to fee arrangements between the physician and the patient and is not applicable to the reasonableness of fees to be paid under the Blue Cross policy. We place more weight on the conclusions reached by the Medical Review Committee. While this committee did not discuss the fees and the treatment with the two surgeons involved, nevertheless, the operative procedure and Touro records were available and considered by them.
Accordingly, we find no error in the trial judge's determination that the customary and reasonable surgical fees under the circumstances is $2,320.00 and that reimbursement is owed to Adler in the sum of $1,616.00 according to the terms of the policy.

COST OF PROSTHESIS
We are also in agreement with the trial judge that the $100.00 deductible applies to the second prosthetic device purchased by the plaintiff and that Blue Cross is responsible for the reimbursement to plaintiff for the cost of the device, less $100.00. Under Article II (F), the $100.00 deductible provisions apply if a 90 day period elapses during which time the medical expenses incurred did not exceed the sum of $50.00. The first prosthetic device was purchased on March 28, 1969 and the second (the one in question) was purchased on July 18, 1969. No charges were made in the interim. Accordingly, defendant is responsible for the reimbursement of the sum of $275.20 for the prosthesis.

PENALTIES AND ATTORNEY'S FEES
We now turn to the question of attorney's fees and penalties.
The act[5] provides that the claim must be paid not more than 30 days from the date of written notice and proof of claim unless just and reasonable grounds exist for nonpayment. In the instant case, a conditional offer of payment was made.
The attorneys for the defendant in letters addressed to plaintiff's counsel stated that the cashing of the checks for surgical fees is made with prejudice to plaintiff's right to sue for the difference, and the offer of the amount of the payment for the prosthetic device constitutes payment in full settlement. While it is conceded that the checks bear no recitation of a conditional tender, nevertheless, the effect of the communication from the attorney for Blue Cross is the same.
While it is true that reasonable grounds exist for the denial of the excess of the amount admittedly owed by defendant, nevertheless, Blue Cross, under the statute, had a responsibility to make payment of the $1,616.00 within 30 days of written notice and proof of claim.
In Spano v. Emmco Insurance Company, 239 So.2d 434 on page 437 (La.App. 4th Cir. 1970), where in awarding penalties *182 and attorney's fees in connection with a claim for automobile theft loss, we said:
"Where a dispute arises over the amount due, the insurer must tender the amount it thinks is just, even though tender is rejected by the insured. Further, if the insurer conditions its offer to pay the undisputed amount on the insured's acceptance thereof in full settlement, it is no tender within the contemplation of the act."[6]
A conditional tender, therefore, does not meet the requirements of payment under the provisions of LSA-R.S. 22:657.
In this instance, defendant cannot avoid being cast for payment of the penalties and attorney's fees required by the statute.
Accordingly, defendant is bound for the payment of double the amount of the benefits due, or the sum of $3,782.40.[7] In addition, from our consideration of the evidence, we are of the opinion that attorney's fees in the sum of $1,000 is reasonable under the circumstances.
For the reasons assigned, the judgment appealed from is amended only insofar as to increase the amount awarded to the plaintiff from the total sum of $1,891.20 to the total sum of $3,782.40, together with legal interest[8] thereon from date of judicial demand until paid, plus attorney's fees in the sum of $1,000.00. As thus amended and in all other respects, the judgment appealed from is affirmed; all costs in both courts to be paid by the defendant-appellee.
Amended and affirmed.
NOTES
[1] An artificial device to replace the amputated limb.
[2] LSA-R.S. 22:657 reads:

"A. All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection b, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases."
[3] Loomis v. Travelers Insurance Company, 169 So.2d 544 (La.App. 4th Cir. 1964).
[4] This 1969 fee scale is used at Touro Infirmary, Tulane and L.S.U. Schools of Medicine as a basis for setting fees in medicare cases according to the testimony of Dr. Dabney M. Ewin.
[5] LSA-R.S. 22:657, supra.
[6] See also: Sensat v. State Farm Fire and Casualty Company, 176 So.2d 804 (La.App. 3rd Cir.), at page 807; Guillory v. New York Fire and Marine Insurance Co., 201 So.2d 366 (La.App. 3rd Cir. 1967), at page 368; Hammett v. Fire Ass'n of Philadelphia, 181 La. 694, 160 So. 302 at page 304.
[7] $1,616.00, amount of benefits owed plus $275.20, amount owed for the prosthetic device totals $1,891.20. Double that amount is $3,782.40.
[8] See Crowe v. Equitable Life Assur. Soc., 179 La. 444, 154 So. 52, which holds that interest in a claim under an accident and health policy may be awarded when prayed for.